**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

      v.

ZIBROX MUSCADIN,

                   Defendant.

8:26-cr-103
(ECC)

---

Kevin Cheung, Assistant U.S. Attorney, *for the United States*
Nicolas Hurtado Cortes, Esq., *for Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

On November 25, 2025, Defendant Zibrox Muscadin, a citizen and national of Haiti with no legal status in the United States, was charged by criminal complaint with eluding examination and inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(2). *See United States of America v. Zibrox Muscadin*, Case No. 8:25-mj-395 (ML) (MJ Docket), Dkt. No. 1. Following a one-day bench trial before United States Magistrate Judge Miroslav Lovric, Defendant moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29, arguing that a violation of § 1325(a)(2) "needs to happen at a port of entry." MJ Docket, Dkt. No. 43 at 75:16-17, 91. The government opposed the motion. *Id.* at 82-84, 91. Magistrate Judge Lovric denied Defendant's motion, found him guilty, and sentenced him to time served. *See* MJ Docket, Dkt. Nos. 35, 43 at 95-99. Presently before the Court is Defendant's appeal pursuant to Fed. R. Crim. P. 58(g)(2)(B). MJ Docket, Dkt. No. 36. The appeal is fully briefed. Dkt. Nos. 2, 3, 4, 6. For the reasons articulated below, this Court vacates Defendant's conviction.

I.     **BACKGROUND**

   A.  **Facts[1]**

On November 23, 2025, United States Border Patrol Agents were notified that a remote camera near Sulphur Springs, New York and the Canadian border had captured images of several individuals walking north at approximately 9:50 p.m.  *See* MJ Docket, Dkt. No. 43 at 19:22 – 21:7-23.  At approximately 11:18 p.m., Border Patrol Agent Kevin Eddy received notification that the same camera had captured images of a small group of people walking south.  *Id.* at 23:25 – 24:1-12.  Border Patrol Agent Eddy and other agents went to the area, which was approximately two and one-half to three miles from the closest port of entry, to investigate.  *Id.* at 16:17-20; 25:24 – 26:2.

A minivan later passed Agent Eddy, and Agent Eddy followed the minivan for a few minutes before stopping it.  *Id.* at 28:22 – 29:18.  Defendant was one of two passengers in the backseat.[2]  Both Defendant and the other backseat passenger, later identified as Diverna Dalusma, were wearing two layers of clothing, their boots were muddy, and the legs of their pants were damp.  *Id.* at 29:23 – 30:5; 33:9-16.  Mr. Dalusma stated that both he and Defendant were from Haiti.  *Id.* at 33:9-16.  Record checks confirmed that Defendant was a citizen of Haiti with no legal status in the United States.  *Id.* at 68:13-17; 72:22 – 73:4.   Finally, Mr. Dalusma testified that he saw Defendant in the woods near the border and, after learning that Defendant was Haitian and trying to get to New York City, Mr. Dalusma invited Defendant to join him.  *Id.* at 52:8 – 53:17.

---

[1] The facts are drawn from the transcripts of the bench trial.  The government called three witnesses, and Defendant presented no witnesses.

[2] The parties agree that Defendant was one of the backseat passengers.  Dkt. No. 3 at 21 (citing MJ Dkt. No. 43 at 33:9-16, 25; 34:1-7); Dkt. No. 4 (citing Dkt. No. 3 at 21).

## II.    STANDARD OF REVIEW

The Court has jurisdiction over Defendant's appeal pursuant to 18 U.S.C. § 3402 and Rule 58 of the Federal Rules of Criminal Procedure.  "In an appeal from a magistrate judge's judgment of conviction, 'the scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge.'"  *United States v. Espinoza-Cabrera*, No. 8:26-cr-00062 (AMN), 2026 WL 1161551, at *2 (N.D.N.Y. Apr. 27, 2026), *appeal docketed*, No. 26-1427 (2d Cir. May 22, 2026) (quoting *United States v. Radin*, No. 16-cr-528, 2018 WL 1384514, at *3 (S.D.N.Y. Mar. 18, 2018)).  "On appeal, this Court reviews questions of law *de novo* and accepts the Magistrate Judge's factual determinations, unless clearly erroneous."  *Id.* (quoting *United States v. Marquez*, 979 F. Supp. 2d 326, 331 (E.D.N.Y. 2013) and citing *United States v. Johnson*, No. 05-mc-94 (TJM), 2006 WL 266557, at *1 (N.D.N.Y. Feb. 1, 2006)).

When a defendant challenges the sufficiency of the evidence, "an appellate court must view the evidence 'in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor.'"  *Marquez,* 979 F. Supp. 2d at 331 (quoting *United States v. Corsey*, 723 F.3d 366, 373 (2d Cir. 2013)).  In addition, the conviction must be affirmed if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (quoting *Corsey*, 723 F.3d at 373) (in turn quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

## III.    DISCUSSION

Under 8 U.S.C. § 1325(a)(2), it is a crime for a noncitizen to "elude[ ] examination or inspection by immigration officers."  Defendant argues that his conviction should be vacated because § 1325(a)(2) requires that criminal conduct occur at a port of entry, and the government presented no evidence to satisfy this requirement.  Dkt. No. 2 at 2.  The government responds that § 1325(a)(2) does not require conduct to occur at a port of entry as demonstrated by the "text of

3

the statute, its place within the overall statutory scheme, the absence of location-specifying language in the statute, and the ongoing duty for immigration officers to conduct inspections." Dkt. No. 3 at 6.

The parties have not identified any Supreme Court or Second Circuit authority addressing whether § 1325(a)(2) is limited to conduct at ports of entry, and the Court has not identified any. The Ninth Circuit, which appears to be the only Court of Appeals that has directly addressed this issue,[3] has held that "the government must prove that the alien's criminal conduct occurred at a time and place designated for 'examination or inspection by immigration officers'—i.e., at a port of entry that is open for inspection." [4] *United States v. Corrales-Vazquez*, 931 F.3d 944, 946 (9th Cir. 2019). United States Magistrate Judges in Massachusetts and Maine have also directly addressed this issue, both agreeing with the Ninth Circuit. *See United States v. Guzman Tejeda*, No. 1:25-CR-10454, 2026 WL 1005634, at *1 (D. Mass. Apr. 6, 2026) (finding, in the context of a motion to dismiss for failure to state an offense, that § 1325(a)(2) "refers to conduct that can occur only at a designated port of entry where examinations and inspections take place, and that

[3] In *United States v. Cavillo-Rojas*, the Fourth Circuit issued a summary order concluding that the defendant's prosecution was barred by the statute of limitations, explaining that "a § 1325(a) offense is completed at the time of the defendant's illegal entry, and the statute of limitations begins running at that point." 510 Fed. Appx. 238, 249 (4th Cir. 2013). In that case, the government argued that "the evidence failed to show that federal immigration officials 'found' [the defendant] in the United States prior to the five-year period before his indictment, suggesting that the government must have learned of his presence in the United States before the limitations period could begin to run." *Id.* at 248-49. The Fourth Circuit explained that "the timing of when a defendant is 'found' in the United States by federal immigration authorities is material for calculating the limitations period for a violation of 8 U.S.C. § 1326 (making it a crime for an alien who has previously been denied admission or removed to subsequently enter, attempt to enter, or 'at any time [be] found in[ ] the United States')," but "§ 1325(a) contains no similar 'found in' element." *Id.* at 249.

[4] In *Corrales-Vazquez,* the defendant entered "the United States from Mexico approximately 20 miles east of the port of entry at Tecate, California," and "[s]everal hours after [the defendant] crossed into the country, a border patrol officer found him . . . . hiding in some brush approximately four miles north of the international border." 931 F.3d at 946.

such a violation is not a continuing offense for venue or statute of limitations purposes"); *United States v. Vega*, No. 1:25-MJ-00399, 2025 WL 3558747, at * 2 (D. Me. Dec. 12, 2025) (concluding, in the context of a motion to dismiss for failure to state an offense,[5] that "[t]he entirety of § 1325 and related provisions support the determination that the conduct proscribed by § 1325(a)(2) is conduct that occurs at a port of entry").

Other United States District and Magistrate Judge courts have also recently considered the government's arguments in the context of statute of limitations and venue challenges to § 1325(a)(2) prosecutions and convictions. With the exception of two United States Magistrate Judges—one reversed by the district court and the decision appealed here—those courts similarly rejected the government's interpretation.[6] *See United States v. Pereira*, Case No. 5:26-cr-112 (BKS), 2026 WL 1724480, at *6 (N.D.N.Y. June 15, 2026) (concluding that the statute of limitations barred prosecution because § 1325(a)(2) is not a continuing offense and that "[w]hether § 1325(a)(2) is read in its immediate context, between two entry-related, non-continuing offenses, or viewed in the wider context of its surrounding provisions, which contain continuing offenses, the Court finds 'eludes' unambiguously means eludes examination or inspection at a time and place where required, such as a port of entry"); *United States v. De La Cruz-Rodriguez*, Case No.

---

[5] In *Vega,* Defendant moved to dismiss because the charging document failed to state an offense and venue was improper. *Vega,* 1:25-mj-399, Dkt. No. 14. The government filed an appeal and later withdrew it. *Id.* at Dkt. Nos. 30, 31, 32.

[6] In two related cases where the defendants challenged venue, United States Magistrate Judge Gary L. Favro concluded that § 1325(a)(2) was a continuing offense. *United States v. Espinoza-Cabrera, Tenecela-Aguaiza,* No. 25-mj-365, Dkt. No. 17 (N.D.N.Y. Dec. 12, 2025); *United States v. Espinoza-Cabreara,* No. 25-po-161, Dkt. No. 9 at 16-18 (N.D.N.Y. Feb. 12, 2026); *United States v. Tenecela-Aguaiza,* No. 25-po-162, Dkt. No. 10 at 16-18 (N.D.N.Y. Feb. 12, 2026). United States District Judge Anne M. Nardacci later reversed these decisions. *Espinoza-Cabrera,* 2026 WL 1161551, at *2 and *United States v. Tenecela-Aguaiza*, Case No. 8:26-cr-61 (AMN), 2026 WL 1160623 (N.D.N.Y. Apr. 27, 2026), *appeal docketed*, No. 26-1428 (2d Cir. May 22, 2026). The government's appeals in both cases are pending before the Second Circuit Court of Appeals.

2:25-mj-134, 2026 WL 1440146, at \*4, \*9 (D. Vt. May 20, 2026) (concluding that § 1325(a)(2) is not a continuing offense, venue was therefore not proper in Vermont where the defendant entered the United States in Texas, and "the offense conduct for a § 1325(a)(2) violation 'occurs at a time and place where the alien is at risk of undergoing [the required] processes in the first place . . . at open and operating ports of entry'") (quoting *Corrales-Vazquez,* 931 F.3d at 949); *Espinoza-Cabrera*, 2026 WL 1161551, at \*5 (concluding that § 1325(a)(2) is not a continuing offense, venue was therefore not proper in the Northern District of New York where the defendant entered the United States in Florida, and "[u]nder Section 1325(a)(2), a defendant's conduct . . . must occur at a designated port of entry that is open for inspection and examination") (citations omitted); *Tenecela-Aguaiza*, 2026 WL 1160623, at \*5 (same where the defendant entered the United States in Texas); *United States v. Cuadra Soto*, No. 4:25MJ3267, 2026 WL 123220, at \*3, \*7 (D. Neb. Jan. 16, 2026) (concluding that "[r]ead in the context of the entire statutory scheme," § 1325(a)(2) is not a continuing offense, and venue was therefore not proper in Nebraska where the defendant entered the United States in Texas).  For the reasons articulated below and consistent with the above-referenced decisions, this Court concludes that § 1325(a)(2) is limited to criminal conduct at times and places where examination and inspection are required including ports of entry.

A.    **Relevant Legal Standard**[7]

"To determine whether a violation of § 1325(a)(2) is a continuing offense, the Court first considers the statute's text, *see Flowers Foods, Inc. v. Brock*, No. 24-935, 608 U.S. —, 2026 WL 1485669, at \*3 (U.S. May 28, 2026) ("Start with the statutory text."), and its "plain meaning, if it has one," *United States v. Bulloch*, 165 F.4th 676, 682 (2d Cir. 2026) (quoting *United States v.*

---

[7] This discussion of the applicable statutory interpretation law is taken from Chief United States District Judge Brenda K. Sannes' cogent summary in *Pereira*, 2026 WL 1724480, at \*3.

*Dauray*, 215 F.3d 257, 260 (2d Cir. 2000)).  "The plain meaning does not turn solely on dictionary definitions of [the statute's] component words, but is also determined by the specific context in which that language is used, and the broader context of the statute as a whole."  *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) (internal quotations omitted); *see also Bulloch*, 165 at 682 ("In looking at a statute's plain meaning, we also must consider the context in which the statutory terms are used, as we do not . . . construe statutory phrases in isolation; we read statutes as a whole.") (quoting *Springfield Hosp., Inc. v. Guzman,* 28 F.4th 403, 418 (2d Cir. 2022).  "Due respect for the prerogatives of Congress in defining federal crimes prompts restraint in this area, where [courts] typically find a narrow interpretation appropriate."  *Bulloch,* 165 F.4th at 682 (additional quotation omitted).

"If the statutory language is unambiguous, the inquiry ends there."  *Id.* at 683.  "If [the Court] find[s] the statutory provision is ambiguous," however, "[it] then turn[s] to canons of statutory construction for assistance in interpreting the statute."  *Rowland*, 826 F.3d at 108 (internal quotation omitted)).  The Court "resort[s] to legislative history only if, after consulting canons of statutory [construction], the meaning remains ambiguous."  *Rowland,* 826 F.3d at 108.

### B.    Analysis

Section 1325(a) states, in relevant part, that:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall [be guilty of an offense].

8 U.S.C. § 1325(a).

At the outset, "the relevant phrase – 'eludes examination or inspection by immigration officers' . . . 'has remained unchanged since' it was first used in 1929," and "'it presumptively

retains its original meaning.'" *Corrales-Vasquez*, 931 F.3d at 948 (quoting 8 U.S.C. § 1325(a)(2) and *Whitfield v. United States,* 574 U.S. 265, 267 (2015)). In *Corrales-Vasquez,* the Ninth Circuit explained that "[i]n 1929, as today, the verb 'elude' was more commonly used to mean 'avoid slyly, by artifice, stratagem, or dexterity,' or 'escape from in a covert manner.'" *Id.* at 948 (citing *Webster's New International Dictionary* 713 (1st ed. 1930) (additional citations to definitions from 1929, 1951, 1970, and 2002 omitted). The Ninth Circuit also explained that "[t]o 'elude' something would not usually mean to simply avoid it—the avoidance generally contemplates some form of 'escape,' whether through 'quickness [or] cunning[ness].'" *Id.* at 949 (quoting *United States v. Oscar,* 496 F.2d 492, 494 (9th Cir. 1974) (alterations in original) (additional citation omitted)). "To elude, in other words, generally contemplates a risk of exposure to, and subsequent escape from, the object being eluded." *Id.* The Ninth Circuit provided examples of "an alien who hides in the trunk of a vehicle passing through a port of entry, or an alien who crosses through a port of entry on foot and then sneaks by the officers conducting inspections or examinations." *Id.* The Ninth Circuit concluded that an individual "'eludes examination or inspection' only if the alien's conduct occurs at a time and place where the alien is at risk of undergoing those processes in the first place at the time and place that those processes occur in the first place," and "[b]ecause those processes occur at open and operating ports of entry, the alien's criminal conduct—the 'elud[ing]'—must occur there as well." *Id.*

The government does not appear to challenge the Ninth Circuit's definition of elude. *Compare* Dkt. No. 3 at 8 (in 1952, "elude" meant "'[t]o avoid slyly or adroitly, as by artifice, stratagem, or dexterity; to evade; . . . [t]o escape the notice or perception of'") (quoting *Websters New English Dictionary* 267 (6th ed. 1951)), *with Corrales-Vazquez,* 931 F.3d at 949 ("avoid adroitly, as by artifice; evade," or "escape the notice of") (quoting *Webster's New Collegiate*

*Dictionary* 267 (6th ed. 1951)).  But the government maintains that the holding in *Corrales-Vazquez* "does not comport with the plain meaning of 'elude,'" because a person "may 'elude' an examination or inspection . . . at an open port of entry" or "by avoiding the location at which such examinations and inspection occur," and "[i]t would make no sense to criminalize one and not the other."  Dkt. No. 3 at 9.  When presented with the same argument in the context of a statute-of-limitations challenge to a § 1325(a)(2) prosecution, Chief United States District Judge Brenda K. Sannes explained that this argument is not persuasive because "Congress did criminalize the other: § 1325(a)(1) makes it a crime to 'enter[] or attempt[] to enter the United States at any time or place other than as designated by immigration officers.'"  *Pereira*, 2026 WL 1724480, at *5.

Furthermore, "the specific context in which th[e] language is used," "the broader context of the statute as a whole," and its "place in the overall statutory scheme'" do not support the government's position.  *Perreira,* 2026 WL 1724480, at *3, *4 (citations omitted).  As for the adjacent subsections, the government argues that the use of "elude" in § 1325(a)(2), instead of "enter," the word used in § 1325(a)(1) and (a)(3), indicates that entering occurs at the border, while eluding continues until apprehension or self-reporting.  Dkt. No. 3 at 11.  But the placement of § 1325(a)(2) between two entry offenses—"entry at a time or place other than as designated, § 1325(a)(1) . . . and entry by false representation, § 1325(a)(3)"—actually "support[s] the Court's narrower reading of 'eludes' as limited to the time and place of inspection or examination at a port of entry."  *Pereira,* 2026 WL 1724480, at *4 (citations omitted).  *See also Guzman Tejada,* 2026 WL 1005634, at *5 ("By differentiating (a)(1)—which prohibits entry 'at any time or place other than as designated by immigration officials'—as an 'improper time or place' offense, it logically follows that (a)(2) and (a)(3) can only occur at a *proper* time or place, *i.e.* at a designated port of entry.").

In fact, "the [g]overnment's broad reading" of § 1325(a)(2) would "render § 1325(a)(1) superfluous." *Pereira,* 2026 WL 1724480, at *5 (citing *Corrales-Vazquez,* 9314 F.3d at 950); *see id.* ("If, as the government argues merely crossing into the United States without examination or inspection violates § 1325(a)(2), regardless of time or place, then much of the highly specific language in § 1325(a)(1) would be superfluous—any alien who 'enters . . . the United States at any [non-designated] time or place' under § 1325(a)(1) would also be guilty of 'elud[ing] examination or inspection' under § 1325(a)(2)."). *See also Espinoza-Cabrera,* 2026 WL 1161551, at *4 (concluding that if § 1325(a)(2) "is construed as broadly as the Government posits, subsections (a)(1) and (a)(3) would be rendered superfluous"). "[I]t would also violate the related principle of interpretation that general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." *Id.* at *5 (internal quotation marks omitted) (quoting *Bloate v. United States,* 559 U.S. 196, 207-08 (2010)). "[T]he more cohesive reading of the statute indicates that the 'other than as designated by immigration officials' language found in (a)(1) is only necessary to differentiate this conduct from the conduct described in (a)(2) and (a)(3), which must occur at a designated port of entry." *Id.* (quoting *Guzman Tejeda,* 2026 WL 1005634, at *5).

The government also takes the position that the "broader statutory context of Title 8," specifically the absence of the § 1326(a)(2) "found in" language in § 1325(a)(2), supports its interpretation. Dkt. No. 3 at 11-12. Section 1326(a)(2) states that "any alien who has been denied admission, excluded, deported, or removed . . . thereafter enters, attempts to enter, or is at any time found in, the United States" shall be guilty of an offense. 8 U.S.C. § 1326(a)(2). As the government acknowledges, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion." *Russelo v. United States,* 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)). Applying that presumption here, the absence of the § 1326(a)(2) "found in" language would generally result in a presumption that Congress acted intentionally when it did not add "found in" to § 1325(a)(2). *See Cuadra Soto,* 2026 WL 123220, at *3 (stating, in the context of whether § 1325(a)(2) is a continuing offense,[8] that if "Congress intended to make illegal entry by eluding inspection a continuing offense, it could have amended section 1325 when it amended section 1326 to add the 'found in' language to section 1325. It did not and this is significant.").

The government argues, however, that "'[t]he force of any negative implication . . . depends on context.'" Dkt. No. 3 at 12 (quoting *NLRB v. SW Gen., Inc.,* 580 U.S. 288, 302 (2017)) (internal quotation marks and citation omitted by the government). According to the government, the fact that Congress did not add "found in" language to § 1325(a)(2) supports its interpretation because that language was not necessary, given that Congress had already changed "enter[ed] without inspection," to "elude[] examination or inspection by immigration officials" thereby "expand[ing] the scope of [§ 1325(a)(2)] beyond the mere point of entry." *Id.* at 12 (citations omitted).

This argument does not alter the Court's reading of § 1325(a)(2), as it is merely a restatement of the government's argument that "elude" has a broader meaning than "enter." As the Court previously explained, that argument is not persuasive. *See supra* at 9. In addition, it is

---

[8] The standard for determining whether a crime is a continuing offense is well-established: "[A] crime is not a continuing offense 'unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" *Pereira,* 2026 WL 1724480, at *1 (quoting *United States v. Green,* 897 F.3d 443, 448 (2d Cir. 2018) (in turn quoting *Toussie v. United States,* 397 U.S. 112, 115 (1970))).

unclear why the government's interpretation of the statutory history—that Congress did not add the "found in" language to § 1325(a)(2) because it understood "elude" to have the same effect—is more persuasive than the general presumption that Congress acted intentionally when it did not add "found in" to § 1325(a)(2).

Furthermore, although the government is correct that Congress could have added "upon entry" or "at a port of entry" to § 1325(a)(2), Dkt. No. 3 at 12, Congress also could have added other language.  Indeed, "had Congress wanted to use a broader verb such as 'avoid,' it easily could have done so, as it did in other immigration-related statutes.  Or Congress could have replicated the language already in use in the predecessor to § 1325(a), which prohibited 'enter[ing] without inspection.'  Congress's decision not to use either of these 'ready alternative[s]' in § 1325(a)(2) 'indicates that Congress did not in fact want' this particular provision of the statute to be as broad as the government claims." *Corrales-Vazquez,* 931 F.3d at 949 (citations omitted); *see also Guzman Tejada,* 2026 WL 1005634, at *5 (rejecting the government's argument that the "absence of" words requiring that that the criminal conduct occur at "a designated port of entry" is unambiguous leaving "no room for construction," and finding the Ninth Circuit's reading persuasive).

Finally, the government argues that "the duty for aliens to submit to inspection is an ongoing obligation" regardless of where they are located.  Dkt. No. 3 at 13.  In *Pereira*, Chief Judge Sannes explained in detail why this argument is not persuasive.  First, even assuming that "an immigration officer's obligation to inspect 'applicants for admission' is mandatory," the government did not establish "that mandatory is synonymous with continuous, nor does the [g]overnment point to any language in § 1225(a)(3) that would suggest an ongoing obligation to report for inspection." *Pereira,* 2026 WL 1724480, at * 4.  To the contrary, "[t]he language 'eludes

12

examination or inspection by immigration officers,' . . . suggests that the duty is 'triggered when an immigration officer encounters' an alien who is an 'applicant for admission or otherwise seeking admission.'" *Id.* (quoting *United States v. Morales-Barajas*, No. 2:26-mj-00224, 2026 WL 1208702, at *5 (S.D. Tex. Apr. 13, 2026)).  Reading § 1325(a)(2) and § 1225(a)(3) together they are "consistent with the proposition that the inspection requirement arises sporadically rather than continuously—in other words, that there are times and places when an alien is subject to inspection, such as upon entry." *Id.*  In addition, "[t]his reading . . . comports with the 'plain-sense use of the term ['eludes,' which] suggests that there must actually have been *something* to elude: an inspection or examination to which the alien was at risk of being called upon to undergo.'" *Id.* (quoting *Morales-Barajas,* 2026 WL 1208702, at *5 and citing *Corrales-Vazquez,* 931 F.3d at 949 (explaining that the obligation to undergo inspection or examination arises 'at a time and place' where 'those processes occur,' namely 'at open and operating ports of entry'")).

Accordingly, consistent with virtually all of the courts that have considered the meaning of "elude" in § 1325(a)(2)—the Ninth Circuit, the United States Magistrate Judges in the Districts of Maine and Massachusetts in the same context presented here, and other courts in the context of statute of limitations and venue challenges—this Court agrees that "[w]hether § 1325(a)(2) is read in its immediate context, between two entry-related, non-continuing offenses, or viewed in the wider context of its surrounding provisions, which contain continuing offenses . . . 'eludes' unambiguously means eludes examination or inspection at a time and place where required, such as a port of entry." *Pereira*, 2026 WL 1724480, at *6; *see also De La Cruz-Rodriguez*, 2026 WL 1440146, at *4 (concluding that "the offense conduct for a § 1325(a)(2) violation 'occurs at a time and place where the alien is at risk of undergoing [the required] processes in the first place . . . at open and operating ports of entry'") (quoting *Corrales-Vazquez,* 931 F.3d at 949); *Espinoza-*

*Cabrera*, 2026 WL 1161551, at *5 (concluding that "[u]nder Section 1325(a)(2), a defendant's conduct . . . must occur at a designated port of entry that is open for inspection and examination"); *Tenecela-Aguaiza*, 2026 WL 1160623, at *5 (same); *Vega*, 2025 WL 3558747, at * 2 (concluding that "[t]he entirety of § 1325 and related provisions support the determination that the conduct proscribed by § 1325(a)(2) is conduct that occurs at a port of entry"); *Guzman Tejeda*, 2026 WL 1005634, at *7 ("In reading § 1325(a)(2) as a whole, and in giving effect to all its provisions, I find that a violation of 8 U.S.C. § 1325(a)(2) requires that the Government allege that [the defendant] eluded inspection or examination at a designated port of entry open for inspection and examination"). *See also Cuadra Soto*, 2026 WL 123220, at *3 (D. Neb. Jan. 16, 2026) (concluding that "[r]ead in the context of the entire statutory scheme," § 1325(a)(2) is not a continuing offense, and venue was therefore not proper in Nebraska when the defendant entered the United States in Texas).

Applying that standard here, the conviction is vacated because even viewing the evidence in the light most favorable to the government, there is no evidence that Defendant was ever at a place where examination and inspection are required. Mr. Dalusma testified that he saw Defendant in the woods near the border and, after learning that Defendant was Haitian and trying to get to New York City, Mr. Dalusma invited Defendant to join him. MJ Docket, Dkt. No. 43 at 52:8-53:17. In addition, that testimony was supported by evidence that Defendant's boots were muddy and his pants were wet indicating that he had crossed through the woods, not a port of entry. *Id.* at 29:23-25 – 30:1-5. Finally, when Border Patrol Agents stopped the minivan containing Defendant, they were approximately two and one-half to three miles away from the nearest port of entry. *See id.* at 16:17-20, 28:3-10.

14

The government does not dispute this lack of evidence, and instead argues that such evidence is not required. *See* Dkt. No. 3 at 15-17. Indeed, the criminal complaint alleges that Defendant "unlawfully eluded examination, and inspection by Immigration officials by entering the United States at a place not authorized for the entrance of immigrants." MJ Docket, Dkt. No. 1.

Because § 1325(a)(2) only applies to eluding examination or inspection at times and places where examination and inspection are required including ports of entry, and no such evidence was presented, Defendant's conviction is vacated.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant Muscadin's conviction is **VACATED**; and it is further

**ORDERED** that this case is **REMANDED** to Magistrate Judge Lovric with instructions to enter judgment of acquittal; and it is further

**ORDERED** that the Clerk of Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 8, 2026

Elizabeth C. Coombe
U.S. District Judge

15